**EZZELL TRUCKING, INC., Petitioner,**

v.

**FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, Respondent.**

**No. 01–1357.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 2002.

Decided Nov. 5, 2002.

Timothy W. Wiseman argued the cause for petitioner. With him on the briefs were Laurie T. Baulig and Daniel R. Barney.

August E. Flentje, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief was John C. Hoyle, Special Counsel. Mark S. Davies, Attorney, U.S. Department of Justice, entered an appearance.

Before: HENDERSON, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

A commercial motor carrier petitions for review of a Federal Motor Carrier Safety Administration order upgrading the company's safety rating to "satisfactory"—the highest possible rating—but letting stand a finding that the company had violated regulations concerning pre-employment drug testing of drivers. Because petitioner has failed to demonstrate that the drug testing finding injures it in any way, we dismiss the petition for lack of Article III standing.

I.

Created in 1999 to take over certain duties from the Federal Highway Administration, *see* Motor Carrier Safety Improvement Act of 1999, Pub.L. No. 106–159, § 101(a), 113 Stat. 1748, 1750–51 (codified at 49 U.S.C. § 113), the Federal Motor Carrier Safety Administration assigns safety fitness ratings to owners and operators of commercial motor vehicles. 49 U.S.C. § 31144(b); 49 C.F.R. § 1.73(h). Administration inspectors perform periodic

on-site compliance reviews, in which they assess points for regulatory violations and preventable accidents in six categories called "factors"—general, driver, operational, vehicle, hazardous materials, and accidents—and then assign ratings of "satisfactory," "conditional," or "unsatisfactory" for each factor. 49 C.F.R. §§ 385.5, 385.7; *id.* pt. 385, App. B, II. From these factor ratings, the Administration calculates an overall rating of "satisfactory," "conditional," or "unsatisfactory." *Id.* § 385.3; *id.* pt. 385, App. B, III. Although a single unsatisfactory factor rating automatically reduces a carrier's overall rating to conditional, a single conditional factor rating does not change a satisfactory overall rating. *Id.* pt. 385, App. B, III.A.

In June 2000, the Administration conducted a compliance review of petitioner Ezzell Trucking, Inc., at its headquarters in Harrells, North Carolina. The inspector assigned the company satisfactory ratings on four factors and an unsatisfactory rating on the operational factor. Concluding that the company had violated drug testing regulations by allowing five new hires to ride with current drivers before receiving their pre-employment drug test results, *see id.* § 382.301(a), the inspector also assigned a conditional rating on the driver factor. The two negative factor ratings caused Ezzell's proposed overall rating to drop from satisfactory to conditional. Ezzell appealed, and the Administration vacated the unsatisfactory operational factor rating but let the drug testing violation stand. Therefore, because Ezzell had five satisfactory factor ratings and one conditional factor rating, the Administration restored the company's overall rating to satisfactory.

Ezzell nonetheless filed a petition for review. Challenging the drug testing violation, the company argues both that the five new hires had not yet been authorized to act as drivers and that riding as a passenger in a commercial motor vehicle as part of an orientation program should not trigger drug-testing requirements. *See id.* §§ 382.107, 382.301(a).

## II.

Before considering the merits of Ezzell's challenge, we must address the Administration's argument that the company lacks Article III standing. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 1012–13, 140 L.Ed.2d 210 (1998). Under the "irreducible constitutional minimum" required for standing, Ezzell must demonstrate an "injury in fact" that is both concrete and particularized and actual or imminent, a causal connection between the injury and the Administration's action, and a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992). According to the Administration, Ezzell has suffered no injury in fact because the company prevailed in its administrative appeal of its overall safety rating. *See, e.g., Mathias v. Worldcom Techs., Inc.,* 535 U.S. 682, ——, 122 S.Ct. 1780, 1780, 152 L.Ed.2d 911 (2002) (per curiam) (a successful party generally may not appeal a favorable judgment from an agency or lower court simply because it dislikes the decision's language or reasoning).

Acknowledging that it succeeded in having its overall rating restored to satisfactory, Ezzell argues that the conditional factor rating injures it in several ways. First, the company asserts in its brief that principles of collateral estoppel will bar it from challenging the drug testing violation finding in a pending civil enforcement proceeding. We rejected a similar argument in *Sea-Land Service, Inc. v. Department of Transportation,* 137 F.3d 640 (D.C.Cir.

1998), holding that an administrative ruling unnecessary to the judgment raises "no reasonable concern about preclusive effect" and thus does not support Article III standing. *Id.* at 648–49. In any event, the Administration informed us at oral argument that the finding will have no preclusive effect in the related proceeding. In view of this assurance, Ezzell's counsel conceded that the possibility of collateral estoppel cannot provide a basis for Article III standing.

Second, pointing out that the drug testing violation is listed in the Administration's public database, called SafeStat, Ezzell claims injury to its reputation. To establish such a claim for purposes of Article III standing, Ezzell must produce evidence that such injury is concrete, not speculative. *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136; *Sierra Club v. EPA,* 292 F.3d 895, 899 (D.C.Cir.2002). Ezzell fails to meet this burden. The company cites only a treatise saying that *some* insurance companies and trucking customers consider safety ratings in setting rates and in choosing carriers. 1 WILLIAM E. KENWORTHY, TRANSPORTATION SAFETY AND INSURANCE LAW § 7–1, at 169 (2d ed.1998). The treatise, however, does not specify whether industry watchers focus on carriers' overall ratings or individual factor scores, nor whether Ezzell's insurance providers or customers have changed their business decisions based on the company's SafeStat listing. *Cf. Advanced Mgmt. Tech., Inc. v. Fed. Aviation Admin.,* 211 F.3d 633, 636–37 (D.C.Cir.2000) (rejecting reputational injury argument as "speculative" based on "sparse record" as to present and future consequences for petitioner's business).

Finally, Ezzell asserts that the presence of a violation in its record increases the probability that inspectors will select it for compliance reviews and roadside inspections. But the company presented no evidence of how much more likely such reviews are to occur or of the burden they would impose. More important, in a letter to us following oral argument, the Administration advises that because the violation listing is more than eighteen months old, "the results of Ezzell Trucking's June 2000 compliance review [are] no longer being used by the SafeStat system for any purpose." Letter from August E. Flentje, Attorney, Department of Justice Appellate Staff Civil Division, to Mark J. Langer, Clerk, United States Court of Appeals for the D.C. Circuit 2 n.1 (Sept. 13, 2002).

Because Ezzell lacks Article III standing, its petition is dismissed.

*So ordered.*